REQUESTED BY: John A. Breslow Auditor of Public Accounts
BACKGROUND INFORMATION
Title IV-D of the United States Social Security Act (42 U.S.C. §§ 651 et seq.) and Neb. Rev. Stat. §§ 43-512
through 43-512.18 and 43-1701 through 43-1743 establish the responsibility for the implementation of the child support collection program. Under this program, the State of Nebraska will reimburse Federal Title IV-D money to the counties of the state for expenses they have previously incurred while performing duties as outlined in a signed agreement between the Department of Social Services (DSS) and the county. The county submits quarterly reports to DSS for reimbursement of expenses they have incurred during the quarter. These expenses include salaries, supplies, and other related expenditures. DSS reviews the quarterly reports and reimburses the county at the current federal financial participation rate. The county then receives the reimbursement money from DSS and deposits it with the county treasurer. The county treasurer places the money in the County General Fund. The County General Fund is the fund in which the original expenses for reimbursement were paid.
QUESTION 1: Is it proper for the county attorney to submit another claim to the county board requesting the portions of the reimbursement that was for him and his secretary's salary to be paid to him personally?
CONCLUSION: The county attorney cannot make a direct contract claim. Reimbursement would be within the discretion of the board.
QUESTION 2: If the county attorney can receive such reimbursement, should this amount be reflected as additional salary and reported on a W-2 or 1099?
CONCLUSION: Since the money does not appear to be salary, it would follow that it should not be reported on a W-2 but it would be reported on a 1099.
DISCUSSION:
The county attorneys have the statutory responsibility to enforce child support orders. This duty is clearly stated in Neb. Rev. Stat. §§ 43-512.01 et seq.
The Department of Social Services is the agency designated by the federal government to administer federal participation under Title IV-D of the Social Security Act.
The Office of Child Support Enforcement in the Department has developed contracts with certain county attorneys, and under those agreements, the county attorney's office is reimbursed for various costs which are incurred in the collection of support. These costs may include salaries for the county attorney and secretaries.
The amount of reimbursement is determined by a formula set out in the contract. Basically, there is federal participation for 66-2/3 percent of the costs that are attributable to the proportion of time spent on child support enforcement. For example, if a part-time county attorney has a salary of $15,000 and spends 1/10 of his time on child support, there would be a reimbursement of 66-2/3 percent of $1,500 or $1,000. If a county had a deputy who was paid $30,000 and spent all of his time on child support enforcement, the county would be reimbursed 66-2/3 of the salary or $20,000.
The intent of the IV-D program and federal participation is to create incentive to the county attorneys to actively pursue the collection of child support in behalf of obligee mothers and for the state's interest due to the receipt of state assistance.
The operation costs of a county attorney's office are within the purview of the annual budget for that office. When DSS submits its quarterly payment for the IV-D reimbursement to the county treasurer for deposit in the general fund, it can be considered (1) an additive to the budget of the county attorney's office or (2) a supplement to the general fund for general county expenses.
The rationale is that a county that has signed an agreement commits that county to actively pursuing child support enforcement. Since county attorneys have a myriad of other responsibilities, the supplement of federal money should be a factor in the development of a budget by the county attorney and the county board.
While the county attorney does have the duty to enforce child support orders, as stated in Neb. Rev. Stat. § 43-512.01 etseq., the written agreement provides that the county attorney will perform certain services which he is not required by statute to perform. For instance, the agreement in this case states that the county attorney shall modify existing court orders in IV-D cases to include medical support. Although Neb. Rev. Stat. §43-512.08 allows a county attorney to intervene in proceedings to modify such an order, it does not require him to. Moreover, the agreement itself is not required by law. Rather, the Department of Social Services and the county may enter into such agreement. Neb. Rev. Stat. § 43-512.05. Thus, the county attorney is not charged with the duty to perform every service listed in the cooperative agreement between him and the state.
The State Auditor asks whether it is appropriate for the county attorney to submit a claim and personally receive as additional salary a portion of the reimbursement paid to the county.
It appears that the county board may pay part of the reimbursement to the county attorney personally. However, this is at the county board's discretion; it is not a right to payment to which the county attorney is entitled.
The payment does not appear to violate any statute or constitutional provision. Article III, § 19 of the Nebraska Constitution does state that the compensation of any public officer may not be increased or diminished during his term of office. Also, Neb. Rev. Stat. § 23-1114 states that the salaries of all elected officers of the county shall be fixed before the election to fill such offices. However, neither of these two provisions are violated because the payments made to the county attorney are not for fulfilling duties of the office of county attorney. Thus the county attorney is not receiving additional salary as county attorney.
In State v. Madison County, 213 Neb. 33, 327 N.W.2d 93
(1982), the Nebraska Supreme Court determined that a county sheriff could receive jailer fees because the duties of jailer were not a part of the duties of sheriff. Rather, the jailer is a separate officer, and thus the sheriff who was acting as jailer did not receive jailer fees in his capacity as sheriff, and therefore his compensation as sheriff was not increased by the fees. This office used similar logic in determining that a county sheriff could personally receive fees from the Game Parks Commission for performing deer-tagging inspections pursuant to an agreement between the two parties. Op. Att'y. Gen. No. 94-901
(Nov. 21, 1994).
Since the county attorney is performing duties which he is not required by law to perform, the compensation that the county pays him is most appropriately viewed as compensation for those duties pursuant to the agreement and not as extra compensation for performing the regular duties of the county attorney. However, the county attorney does not have a right to such payment. Rather, it is at the discretion of the county board.
The only case pertaining to whether a county attorney is entitle to such a payment is Plummer v. Hegel, 535 N.E.2d 568
(Ind.Ct.App. 1989). In that case, a county attorney had an agreement with the Indiana State Department of Public Welfare to help enforce child support collection, as contemplated under42 U.S.C. § 658. The attorney then demanded that the Title IV-D incentive payments allocated to the state under Title IV-D be paid directly to him. The court upheld such a claim based on certain statutes in the Indiana Code.
First, the Court noted that the Indiana Appropriation Statute, Ind. Code § 36-2-5-2 (b) (1988), states that "money may be paid out of the treasury only under an appropriation made by the fiscal body, except as otherwise provided by law (emphasis added)." Next, the court looked at the Incentive Payments Statute, Ind. Code § 12-1-6.1-16, which states that the Title IV-D funds shall be distributed equally to "the county general fund, the operating budget of the prosecuting attorney, and the operating budget of the county clerk". the statute also states,"Notwithstanding IC 32-2-5-2(b), distribution from the county treasury shall be made without the necessity of first obtaining an appropriation from the county fiscal body (emphasis added)." Finally, the court looked at statutes authorizing the payment of additional salaries to the county attorney. The court concluded based on these statutes that the county attorney may receive the incentive payments as additional salary and that no approval by the county board is needed.
That case is very distinguishable from the situation in Nebraska. Nebraska law is quite different from Indiana law on the subject of reimbursement distributions. The County Board is charged with making appropriations from the County General Fund under the County Budget Act, Neb. Rev. Stat. §§ 23-901 to23-934 (1991). Section 23-906 specifically designates the finance committee of the county board as the budget-making authority. Nebraska statutes provide no exception to the county board's responsibility for making expenditures, nor do they provide that Title IV-D funds may be directly appropriated to the county attorney without going through the general fund or the budgeting process. Moreover, the county, not the county attorney was the party to the collective agreement with the Department, so the attorney cannot make a direct contract claim. Thus, it appears that the county attorney can only receive the money personally if the county board chooses to give it to him.
In reading this opinion we have considered Neb. Rev. Stat. § 43-512.05 which reads as follows:
Neb. Rev. Stat. § 43-512.05 states in part:
 Any reimbursement funds shall be added to the budgets of those country officials who have performed the services as called for in the cooperative agreements and carried over from year to year as required by law.
Although the statute seems to require that the IV-D funds be in the county attorneys operating budget, the funds still may be allocated as salary if the county attorneys salary is also included in the county boards appropriation for that operating budget.
Since Nebraska statutes do not require that the county attorneys salary be appropriated together with or separate from the budget appropriation for the county attorney, that decision also appears to be within the board's discretion. Thus, the statute quoted above does not alter our conclusions.
You also ask if the reimbursement received by the county attorney as compensation must be included on a W-2 or a 1099. The W-2 form is for reporting salary and wages, while the 1099 is for reporting any income besides salary and wages. Since we have determined above that the compensation received by the county attorney is not salary due the attorney as a county official but rather is compensation for extra services pursuant to a contract, those funds would not be reported on a W-2. However, it appears that the 1099 form covers all forms of income paid by the county other than salary and wages, and thus would cover the compensation for those services that the attorney provides pursuant to the agreement. Thus, the county board should include the funds paid directly to the county attorney on the 1099.
Sincerely,
 DON STENBERG Attorney General
 Royce N. Harper Senior Assistant Attorney General
APPROVED BY:
Don Stenberg 
Attorney General